UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

        :

**MICHAEL O. WILLIAMS**,

        :

               Plaintiff,    :  **MEMORANDUM DECISION AND ORDER**

        :

       – against –       :  24-CV-02733 (AMD) (CHK)

        :

**AMAZON.COM SERVICES LLC**,    :

        :

              Defendant.   :

        :

----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action against the defendant alleging violations of Title VII of the Civil Rights Act of 1964 arising out of the plaintiff's employment and applications for employment with the defendant. Before the Court is the defendant's motion to dismiss. (ECF No. 34.) As explained below, the motion is granted.

## BACKGROUND[1]

### I.    Factual Background

On April 15, 2023, the plaintiff started work as a warehouse associate for the defendant. (ECF No. 1 at 15.) About three months later, on July 19, 2023, the defendant terminated the plaintiff's employment. (*Id.* at 8.) On September 14, 2023, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("First EEOC Charge"), alleging various forms of

---

[1] The facts are drawn from the complaint, the plaintiff's opposition, and documents and exhibits incorporated by reference or otherwise integral to the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). As discussed further below, the Court considers these documents.

employment discrimination, including wrongful termination, retaliation, and harassment due to the plaintiff's race. (ECF No. 13 at 9; ECF No. 36-1 at 8 (First EEOC Charge).) The plaintiff also filed a charge with the New York State Division of Human Rights, which was dismissed on June 5, 2024. (ECF No. 36-3 at 4.) After the First EEOC Charge, the plaintiff and the defendant entered into two settlement agreements: a settlement agreement between the plaintiff, the defendant, and the EEOC ("EEOC Settlement Agreement"), and a private settlement agreement between the plaintiff and the defendant ("Settlement Agreement and General Release"). (ECF No. 13 at 10; ECF No. 36-2 at 7.)

The parties signed the EEOC Settlement Agreement on December 20, 2023. (ECF No. 13 at 11.) The defendant agreed to pay the plaintiff $7,500 in exchange for the plaintiff's agreement to resolve and close the First EEOC Charge. (*Id.* at 10–11.) The agreement provides that the plaintiff "agrees not to institute a lawsuit . . . based on [the First EEOC Charge]" and that "there shall be no discrimination or retaliation in violation of Title VII, against any person because of [First EEOC Charge] or actions relating to that charge or this Agreement." (*Id.* at 10.)

The plaintiff signed the Settlement Agreement and General Release on December 20, 2023, and the defendant signed it on January 18, 2024. (ECF No. 36-2 at 7.) In relevant part, the agreement states:

> [The plaintiff] hereby releases and forever discharges Amazon and each of its divisions, . . . from any and all causes of action, lawsuits, proceedings, complaints, charges, debts, contracts, judgments, damages, claims, and attorneys' fees against the Released Parties, whether known or unknown, which [the plaintiff] ever had, now has or which [the plaintiff] . . . may have prior to the date this Agreement is signed by [the plaintiff] due to any matter whatsoever relating to Williams's employment or separation therefrom (collectively, the "Released Claims").

2

(ECF No. 36-2 at 3.)  This agreement also provides that the plaintiff "shall not apply for, seek or accept employment with Amazon . . . at any time."  (ECF No. 36-2 at 5.)

The plaintiff submitted three job applications to Amazon: two before the settlement agreements were signed, in August 2023 and October 2023, and the third in April 2024, after the settlement agreements were signed.  (ECF No. 13 at 9.)  The defendant rejected all three.  (*Id.* at 14.)  In an April 7, 2024 rejection email, the defendant explained that the plaintiff "was no longer eligible for rehire."  (*Id.*)

On May 17, 2024, after the defendant rejected plaintiff's last application, he filed another EEOC charge ("Second EEOC Charge"), alleging that the defendant was retaliating against him because of the First EEOC Charge.  (ECF No. 36-4 at 2.)  The EEOC issued a Notice of Right to Sue on May 21, 2024, explaining that it would "not be able to complete its administrative process within 180 days of the date the charge was filed."  (ECF No. 13 at 13.)

## II.    Procedural History

The plaintiff brought this action on March 27, 2024 in the Southern District of New York, and it was transferred to this Court on April 4, 2024.  (ECF Nos. 1, 6.)  The plaintiff amended his complaint on June 26, 2024, alleging that the defendant discriminated and retaliated against him by failing to re-hire him, in violation of Title VII of the Civil Rights Act of 1964.  (ECF No. 13 at 5–6, 9, 13.)  The defendant moved to dismiss the amended complaint on January 6, 2026 pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 34.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' . . . will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).  A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation modified).  When ruling on a motion to dismiss, "the court must accept as true all factual allegations in the complaint" and "[a]ll reasonable inferences must be drawn in favor of the non-moving party." *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 147 (E.D.N.Y. 2001), *aff'd sub nom. Watral v. Silvernails Farms LLC.*, 51 F. App'x 62 (2d Cir. 2002) (citation omitted).

The Court construes *pro se* complaints liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist;" accordingly, "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (citation omitted).

## DISCUSSION

### I.    Documents Considered on a Motion to Dismiss

In deciding a motion to dismiss, a court may consider "any statements or documents incorporated in [the complaint] by reference," even if "a plaintiff chooses not to attach" those documents. *Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (citation modified); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).  A document is "incorporated by reference" in the complaint when the complaint makes a "clear, definite, and substantial reference" to it. *DeLuca v. AccessIT Group,*

4

*Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)).

When a document not incorporated in the complaint is "integral to the complaint," it may be a "fair object of consideration." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). A document is integral to a complaint "where the complaint 'relies heavily upon its terms and effect.'" *Id.* (quoting *Chambers*, 282 F.3d at 153). This exception typically applies for "contract[s] or other legal document[s] containing obligations upon which the plaintiff's complaint stands or falls." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). On a 12(b)(6) motion, courts interpret such agreements using general principles of contract interpretation: the "starting point" of interpretation must be "the language itself, giving effect to the plain meaning thereof." *Retirement Bd. V. Bank of N.Y.*, 775 F.3d 154, 165 (2d Cir. 2014) (quoting *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 193 (2d Cir. 2009)); *see also Giuffre v. Andrew*, 579 F. Supp. 3d 429, 438–45 (S.D.N.Y. 2022) (applying general principles of state contract law to interpret the meaning of a previous settlement agreement on motion to dismiss).

Moreover, courts may take judicial notice of information that is "not subject to reasonable dispute" because it is "generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025). Courts in this circuit have determined that this rule applies to settlement agreements. *See, e.g., Johnson v. City of New York*, No. 21-CV-10535, 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023); *In re Nine W. LBO Sec. Litig.*, 505 F. Supp. 3d 292, 302-03 (S.D.N.Y. 2020). Accordingly, such agreements may be considered in the context of a Rule 12(b)(6) motion, and,

5

if applicable, provide grounds for dismissal. *See Deylii v. Novartis Pharms. Corp.*, No. 13-CV-6669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (noting that the court would be "remiss if it did not take judicial notice of the Settlement Agreement and Release" in deciding the defendant's motion to dismiss); *Morris v. David Lerner Assoc.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) (explaining that the court may consider EEOC charges in ruling on a 12(b)(6) motion because they are "public documents filed in state administrative proceedings").

The Court takes judicial notice of the EEOC Settlement Agreement attached to the defendant's motion. The plaintiff attaches an unsigned version of this agreement to the amended complaint, but the Court construes his complaint to incorporate the final version — which the defendant attached to its motion to dismiss — by reference. (ECF No. 13 at 9 ("This EEOC charge resulted in a settlement. Among other things, the settlement agreement states that Amazon shall not retaliate against me for bringing the charges of discrimination.").) *See Helprin*, 277 F. Supp. 2d at 330–31. Further, the authenticity of the agreement is not in dispute. Accordingly, the Court considers it in deciding this motion.

The Court also considers the Settlement Agreement and General Release. Although the plaintiff does not refer to it in the amended complaint, the Court takes judicial notice of its contents, because the plaintiff does not dispute its authenticity. *See Giuffre*, 579 F. Supp. 3d at 438 (explaining that the Court took judicial notice of a previous settlement agreement because it "concededly is authentic" and "its wording . . . is undisputed"). The Settlement Agreement and General Release provide grounds for dismissal here; accordingly, "it makes no sense to deny dismissal simply because [the settlement agreement] was not referenced in the Complaint." *Deylii*, 2014 WL 2757470, at *4.

Additionally, the Court considers the First EEOC Charge and administrative documents attached to the defendant's motion.  Although the plaintiff did not attach these documents to the amended complaint, the complaint incorporates by reference the First EEOC Charge, and the Court takes judicial notice of other administrative documents attached to the parties' papers whose authenticity is not in dispute.  (*See* ECF No. 13 at 9.)

## II.    Title VII Framework

Title VII of the Civil Rights Act of 1964 prohibits employers from "fail[ing] or refus[ing] to hire," or "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  The plaintiff alleges that the defendant violated Title VII by (1) discriminating against the plaintiff on account of his race, color, and gender/sex; and (2) retaliating against the plaintiff.  (ECF No. 13 at 4–6.)[2]

### a.  Discrimination Claim

To succeed on a discrimination claim, the plaintiff must plausibly allege that: "(i) []he is a member of a protected class; (ii) []he is qualified for his position; (iii) []he suffered an adverse employment action; and (iv) the circumstances give rise to an inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  The plaintiff has the initial burden of proving the elements of a discrimination claim.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 792–93 (1973).  On a motion to dismiss, this is a "minimal burden of alleging facts suggesting an inference of discriminatory motivation."  *Levy v. Legal Aid Society*, 408 F.

---

[2] The plaintiff's amended complaint does not expressly allege these separate Title VII claims.  Instead, the plaintiff contends that Title VII is the basis for jurisdiction of the action and that the defendant engaged in "illegal retaliation," "failure to hire," and discrimination based on "race, color, and gender/sex." (ECF No. 13 at 4–6.)  The Court therefore construes the complaint to allege discrimination and retaliation based on the defendant's failure to re-hire him.

7

Supp. 3d 209, 216 (E.D.N.Y. 2019) (quotations omitted).  Nonetheless, the plaintiff's allegations must "nudge his claims across the line from conceivable to plausible to proceed."  *Vega*, 801 F.3d at 84 (citation modified) (quoting *Iqbal*, 556 U.S. at 680).

The plaintiff has not carried this burden.  He alleges no facts to support three of the four elements of the discrimination claim.  He does not identify the protected class to which he belongs or "identify a single statement or action by an employee or employer that suggests that he was treated differently because of his membership in any protected class."  *See Richards v. Mount Sinai South Nassau*, No. 24-CV-8112, 2025 WL 1262470 at *1 (E.D.N.Y. May 1, 2025) (dismissing complaint with same defects).  Nor does he allege that he is qualified for the positions for which he applied.  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015) (dismissing discrimination claim where the plaintiff did not sufficiently allege that he was "qualified for the positions he held at the time he was terminated").  The plaintiff identifies the defendant's failure to hire him as the adverse employment action, but he does not explain how or why this failure gives rise to "an inference of discrimination."  (ECF No. 13 at 6.)  Instead, the plaintiff merely checked a box stating that the defendant's refusal to hire him constituted discrimination based on "race," "color," and "gender/sex."  (*Id.*)  This is not sufficient to support an inference of unlawful conduct.  *See Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" (quoting *Iqbal*, 556 U.S. at 678)).  The plaintiff's allegations supporting his discrimination claim are thus inadequate.  *See Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450 at *14 (E.D.N.Y. Jan. 3, 2017) (dismissing plaintiff's claim because the complaint included only conclusory allegations and failed to "plead any facts to specifically support the inference that he was the target of discrimination because of

8

his race, color, or gender"); *Matthews v. Rasa*, No. 24-CV-2499, 2025 WL 3687759 at \*2 (2d Cir. Dec. 19, 2025) (affirming the dismissal of the *pro se* plaintiff's discrimination claims because the plaintiff failed to plausibly allege discriminatory conduct).

### b. Retaliation Claim

To succeed on a retaliation claim, the plaintiff must allege that: "(i) he engaged in an activity protected under Title VII; (ii) the employer was aware of the plaintiff's participation in the protected activity; (iii) the employer took adverse action against the plaintiff; and (iv) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Yu v. New York City Hous. Dev. Corp.*, 494 F. App'x 122, 126 (2d Cir. 2012). "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90.

The parties do not dispute that the plaintiff engaged in a protected activity when he filed the First EEOC Charge, and it is clear based on the EEOC Agreement that the defendant was aware of that activity. (ECF No. 35 at 21.) The plaintiff alleges that the defendant took an "adverse action" against him by rejecting his job applications in August 2023, October 2023, and April 2024. (ECF No. 13 at 9.) For the fourth element, however, the plaintiff "set[s] forth no specific facts upon which a court could find a plausible violation of Title VII." *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007). Rather, he says only that his job "applications were all rejected," that Amazon informed him that he was "no longer eligible for rehire," and that "Amazon's actions constitute illegal retaliation against [him] for having filed the previous EEOC charge of discrimination." (ECF No. 13 at 9.)

9

### III.   Effect of the Settlement Agreement and General Release

The complaint must be dismissed for an independent reason: the plaintiff settled his dispute with the defendant.  By signing the Settlement Agreement and General Release, the plaintiff agreed to release claims arising out of events before December 20, 2023, and he cannot challenge the April 2024 job rejection because he agreed not to seek employment at Amazon. (ECF No. 36-2 ¶¶ 6, 10.)[3]

#### a.  Validity of the Settlement Agreement and General Release

Although he agrees that he signed the Settlement Agreement and General Release, the plaintiff argues that it is void due to "duress, mutual mistake, and undue influence."  (ECF No. 39 at 12.)  This argument is not persuasive.

To show undue influence, the plaintiff must demonstrate that the defendant "exercised [an influence] amount[ing] to a moral coercion, which restrained independent action and destroyed free agency."  *Harrison v. Grobe*, 790 F. Supp. 443, 455 (S.D.N.Y. 1992) (quoting *In re Estate of Bush*, 85 A.D.2d 887, 446 (4th Dep't 1981)).  While the plaintiff alleges that he was unemployed and financially vulnerable when he signed the agreement (ECF No. 39 at 12), he does not claim that the defendant tried to get him to sign the agreement, let alone that the defendant exercised influence over him "amount[ing] to a moral coercion," *Harrison*, 790 F. Supp. at 455 (citation omitted).

A contract is voidable for duress only when a party "was forced to agree to it by means of a wrongful threat precluding the exercise of free will."  *Cavelli v. New York City Dist. Council of Carpenters*, 816 F. Supp. 2d 153, 161 (E.D.N.Y. 2011) (quoting *First Nat'l Bank of Cincinnati v.*

---

[3] In view of this disposition, the Court does not reach the defendant's other arguments for dismissal.  (*See* ECF No. 35 at 17.)

*Pepper*, 454 F.2d 626, 632 (2d Cir. 1972)).  Financial pressure is not synonymous with duress.

*See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) ("A

mere demonstration of financial pressure or unequal bargaining power will not, by itself,

establish economic duress.").  The plaintiff does not allege that the defendant threatened him or

forced him to sign the agreement; he says only that he was "out of a job which put [him] in a

vulnerable position," and prompted him to sign "quickly."  (ECF No. 39 at 2.)  Being

unemployed undoubtedly made the plaintiff feel "financial pressure," and made a financial

settlement more appealing, but the plaintiff does not allege that the defendant did anything to

make the agreement void.

Nor is there evidence of a mutual mistake.  A contract can be voided "when both parties

to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish

their mutual intent."  *MV Realty PBC, LLC v. Innovatus Capital Partners, LLC*, 794 F. App'x

103, 106 (2d Cir. 2019).  The plaintiff does not identify the mutual mistake in his complaint or

his opposition.  Even if the plaintiff believed that the Settlement Agreement and General Release

did not preclude him from working at Amazon in the future, he does not allege that the defendant

shared this erroneous belief, as is required for a mutual mistake defense.  "When a party makes a

deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his

assessment of the consequences was incorrect."  *Sodhi v. Mercedes Benz Fin. Servs., USA, LLC*,

957 F. Supp. 2d 252, 256 (E.D.N.Y. 2013).

Accordingly, the plaintiff has not sufficiently alleged that the agreement is void.

**b.  Effect of the Settlement Agreement and General Release**

The defendant argues that the release provision of the Settlement Agreement and General

Release bars the plaintiff's claims in this action.  "To dismiss an action based on a release, the

movant must show that the release was intended to cover the subject action or claim."
*Megginson v. City of New York*, 821 F. Supp. 3d 291, 301 (E.D.N.Y. 2026). To make such a showing, the movant may point to the language of the release to demonstrate the breadth of its coverage. *See Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 190 (S.D.N.Y. 2008). Broad language in a release generally evinces the parties' intent to release all claims. *See Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 571 (S.D.N.Y. 2008) (holding that the plaintiff was barred from bringing any employment claims against her former employer given the broad language of the release stating that the plaintiff "discharges [the employer] from any claims 'arising from or relating in any way' to the employment relationship"); *Volk v. Liggett Group Inc.*, No. 96-CV-1921, 1997 WL 107458, at *4–5 (S.D.N.Y. Mar. 11, 1997) (barring the plaintiff's lawsuit against his former employer due to a release waiving "any and all claims . . . in connection with [the plaintiff's] employment").

The Settlement Agreement and General Release provides that the plaintiff "releases" Amazon "from any and all causes of action" that the plaintiff had as of the date he signed the agreement, December 20, 2023. (ECF No. 36-2 ¶ 6.) According to the agreement, the released claims "include, but are not limited to . . . Title VII of the Civil Rights Act," "any claim of unlawful discrimination of any kind," and "any claim that was or could have been asserted in a wrongful termination lawsuit." (*Id.*) As relevant here, the agreement also provides that "[t]he Parties agree and acknowledge that the above Release does not waive claims . . . that may arise after [the plaintiff] signs this Agreement." (*Id.* ¶ 8.)

The Settlement Agreement and General Release bars the plaintiff's claims to the extent it is based on the August 2023 and October 2023 job rejections, or other conduct before December 20, 2023. Amazon rejected these applications before December 20, 2023, when the plaintiff

12

signed the agreement.  (ECF No. 13 at 9; ECF No. 36-2 at 7.)  The plain language of the agreement shows that the parties agreed to discharge all then-existing claims relating to the plaintiff's employment, including his termination and applications for re-hire.  (ECF No. 36-2 ¶ 6.)  *See Hummel*, 575 F. Supp. 2d at 571; *see also Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 362 (S.D.N.Y. 2022) ("The references to known and unknown claims . . . and to claims which are contingent and which Plaintiffs 'may have,' combined with the absence of any language excluding [these] claims, plainly reflects the parties' intent that [these] claims would be included in the scope of the release.").

The April 2024 rejection is not covered by that release, because Amazon rejected the application after the plaintiff signed the Settlement Agreement and General Release.  (ECF No. 13 at 9; ECF No. 36-2 ¶ 8 ("The parties agree and acknowledge that the above Release does not waive claims" "that may arise after [the plaintiff] signs this Agreement . . . .").)  Nevertheless, the plaintiff's claim based on the April 2024 job rejection is barred by the "No Employment" clause of the agreement (ECF No. 36-2 ¶ 10), in which the plaintiff agreed that he would not "apply for, seek or accept employment with Amazon (including its parent companies, subsidiaries and affiliates) at any time, whether directly or through a third party such as a consulting agency."  (*Id.*)  In other words, the parties agreed that the plaintiff would not re-apply for — or be hired for — a new position at Amazon.  The plaintiff cannot show that retaliation for the First EEOC Charge was the "but-for" cause of the defendant's adverse action when the plain terms of the Settlement Agreement and General Release show that the defendant had a legitimate, non-discriminatory reason for not rehiring the plaintiff.  *See Vega*, 801 F.3d at 90; *see also Raytheon Co v. Hernandez*, 540 U.S. 44, 51–52 (2003) (holding that the plaintiff's failure-

to-hire retaliation claim failed because a "neutral no-rehire policy, is by definition, a legitimate, non-discriminatory reason not to rehire the plaintiff").

In short, the plaintiff released any claims he had before he signed the Settlement Agreement and General Release, and he waived any right he had to seek a job at Amazon after the date he signed.  Accordingly, the plaintiff's claims must be dismissed.

## IV.    Leave to Amend

*Pro se* plaintiffs should be granted leave to amend "if a liberal reading of the complaint gives an indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). However, the Court has discretion "to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Granting leave is "futile" when "the barriers to relief for [the plaintiff's] claims cannot be surmounted by reframing the complaint." *See Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).

The Court granted the plaintiff leave to amend his complaint once.  (*See* ECF No. 9.)[4] The Court declines to grant leave to amend a second time, because amendment would be futile. Even if the plaintiff amended the complaint to include factual support for his allegations, the Settlement Agreement and General Release would bar the claims.

---

[4] In granting the plaintiff leave to amend, the Court did not "request" and "accept" the complaint on the merits, as the plaintiff maintains.  (ECF No. 39 at 1.)  The Court merely gave the plaintiff permission to amend.  Moreover, the defendant was permitted to move to dismiss the amended complaint.  Fed. R. Civ. P. 12(b).

## CONCLUSION

For these reasons, the defendant's motion is granted and the plaintiff's complaint is dismissed with prejudice.  The Clerk of Court is respectfully directed to enter judgment and close the case.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

          s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      July 7, 2026